## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9405 | **DATE** | July 29, 2004 |
| **CASE TITLE** | *MacCoumber v. Abbott* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Defendants' Motion to Dismiss [17-1] is GRANTED without prejudice with leave to refile an amended complaint within 2 months after a decision in the State Court Litigation. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENNIS MACCOUMBER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROXANNE S. AUSTIN, et al., ) | |
| ) | Hon. Blanche M. Manning |
| Defendants, ) | |
| ) | Case No. 03 C 9405 |
| and ) | |
| ) | |
| ABBOTT LABORATORIES, ) | |
| ) | |
| Nominal Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Dennis MacCoumber brought this shareholder derivative suit on behalf of Abbott Laboratories ("Abbott") against Abbott's board of directors ("the Board") alleging that the Board breached its fiduciary duties of good faith and loyalty by failing to prevent Abbott from fraudulently overcharging Medicare, which resulted in Abbott taking a charge of $600 million. The present matter comes before this Court on the Board's Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1. Alternatively, the Board moves to stay the proceedings under the Colorado River Abstention Doctrine pending a decision in Illinois state court. For the reasons that follow, the motion to dismiss is GRANTED.



DOCKETED
AUG 0 2 2004

27

# BACKGROUND[1]

This case stems from the fraudulent conduct of an Abbott subsidiary, CG Nutritionals ("CG"), which illegally overcharged Medicare. In July 2003, Abbott reached a settlement with the United States Attorney's Office to resolve all outstanding issues arising from the fraud. As part of the settlement, CG pled guilty to one count of obstruction of a criminal investigation and Abbott agreed to pay a $600 million fine.

MacCoumber alleges that the Board breached its fiduciary duties of good faith and loyalty by: (1) knowing of and/or acquiescing to the fraud; and (2) failing to ensure that Abbott complied with Medicare rules and regulations or to adopt measures to prevent the fraudulent conduct.[2]

On September 9, 2003, pursuant to 805 ILCS 5/7.80, MacCoumber made a written pre-suit demand ("the Demand") on the Board, requesting that it commence an action for breach of fiduciary duty against the directors. The relevant part of MacCoumber's Demand states that:

> the directors of Abbott breached their fiduciary duties by : (i) knowingly approving CG Nutritionals' Fraudulent conduct; and/or (ii) abdicating their responsibility to make a good faith effort to oversee the Company's operations. Mr. MacCoumber believes that the acts (and failures to act) described herein represent a systematic failure of the Board to effectively manage the affairs of Abbott. Among other things, it is apparent that the Board has failed to implement necessary oversight procedures and controls to effectively manage Abbott. The Board's systematic failure to properly manage the Company violates the directors' fiduciary duties of loyalty and good faith. As a result of the Board's multiple breaches of duty, Abbott has sustained damages, including, but not limited to, the $600 million in fines paid to settle with the U.S. Attorney's Office.

---

[1] The facts of the background are taken from MacCoumber's Complaint and the attachments thereto.

[2] To bolster this claim, MacCoumber cites to a 2001 settlement in which an Abbott joint venture, TAP Pharmaceutical Products, agreed to pay $875 million to settle charges of defrauding Medicare.

2

Pursuant to 805 ILCS 5/7.80, on behalf of Mr. MacCoumber, I hereby demand that the Board commence a civil action against each of the directors of Abbott to recover for the benefit of the Company the amount of damages sustained by the Company as a result of the directors' breaches of fiduciary duties alleged herein.

If within a reasonable period of time after receipt of this letter the Board has not commenced an action as demanded herein, Mr. MacCoumber will commence a shareholder's derivative action on behalf of Abbott seeking appropriate relief.

(Ex. A, Complaint.)

In response to the Demand, the Board issued a written reply ("the Response") on October 29, 2003. The Response stated that:

You should be aware that, before your Letter was sent three purported shareholder derivative actions were filed in the Circuit Court of Cook County, Illinois raising the same claims asserted in your Letter, and alleging that pre-suit demand on the Board would be futile (the "Litigation"). These lawsuits as originally filed were captioned Corwin v. Leiden, et al., No. 03 CH 10810 (filed June 27, 2003), Brody v. White, et al., No. 03 CH 12814 (filed July 31, 2003), and Gordon v. White, et al., No 03 CH 13089 (filed August 6, 2003). On September 26, 2003, Judge Dorothy Kinniard of the Circuit Court of Cook County, Illinois (Chancery Division) entered an order granting the plaintiffs' motions to consolidate the three actions before Judge Nancy Arnold of the Circuit Court of Cook County, Chancery Division. As of this date, defendants have yet to be served with a consolidated, amended complaint.

The Board strongly disagrees with the contention in the Litigation that a demand on the Board would be futile and will be contesting this issue in Court. Nevertheless, given the present posture of the Litigation, the Board has determined that it would not be a prudent expenditure of resources for it to initiate an inquiry into the allegations in your Letter at this time, inasmuch as the Company will also have to expend resources to defend against the contention that demand is futile and that the derivative action should therefore be allowed to proceed. <u>The Board will monitor the progress of the Litigation and will consider your Letter at a later point in time, as circumstances warrant</u>.

The Board <u>will advise you promptly if, depending on the resolution of the demand futility issue in the Litigation, it determines that your demand is ripe for its consideration</u>.

3

(Ex. B, Complaint)(Emphasis Added).[3]

Apparently not satisfied with the Response, on December 31, 2003, MacCoumber brought the instant action. The Board has moved to dismiss on the grounds that MacCoumber has failed to sufficiently plead wrongful refusal of the Demand. In the alternative the Board has moved to stay the proceedings pending the resolution of the State Court Litigation.

## STANDARD OF REVIEW

Before discussing the Board's Rule 12(b)(6) motion, this Court will set forth the standard of review under Rule 12(b)(6). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the pleadings, construing allegations liberally and viewing them in the light most favorable to the non-moving party. See, e.g., McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992); Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kunik v. Racine County, Wis., 946 F.2d 1574, 1579 (7th Cir. 1991) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

The court will accept all well-pled factual allegations in the complaint as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.2 (1977). In addition, the court will construe the complaint

---

[3] After the settlement of the criminal case but before the Demand, shareholders filed three separate derivative actions in Illinois state court ("State Court Litigation"). These cases have now been consolidated before Judge Nancy Arnold of the Circuit Court of Cook County, Chancery Division. The plaintiffs in the State Court Litigation claim that the directors breached their fiduciary duty and seek to recover the $600 million paid in the settlement of the criminal case. Unlike MacCoumber, however, the State Court Litigation Plaintiff did not make a demand on the Board. Instead, they allege that Demand would have been futile. Whether demand would have been futile is currently under consideration by Judge Arnold.

4

liberally and will view the allegations in the light most favorable to the non-moving party. Craigs, Inc. v. General Electric Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993). The court, however, is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992).[4]

## ANALYSIS

The Board has moved to dismiss on the grounds that: (1) this action is premature because the Board did not refuse the Demand; and (2) even if the Board refused the Demand, MacCoumber has failed to sufficiently plead that refusal was an improper decision under the business judgment rule, as required by Rule 23.1 and 805 ILCS 5/7.80(b). Before addressing these specific contentions, the Court will first discuss the requirement for making a "pre-suit demand" in a derivative action.

A derivative action permits a shareholder to bring suit to enforce a corporate cause of action. Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96 (1991). The purpose of the derivative suit is to allow an individual shareholder to protect the interests of the corporation from the "misfeasance and malfeasance" of the directors of the corporation. Id.

Before bringing a derivative action, however, the shareholder must make a written pre-suit demand on the board of directors of the corporation. See 805 ILCS 5/7.80; Fed. R. Civ. P. 23.1; Mills v. Esmark, Inc., 91 F.R.D. 70, 73 (N.D. Ill. 1981). A shareholder may not bring suit before making a demand unless such demand would be "futile." Mills, 91 F.R.D. at 73. The

---

[4] In addition to the usual Rule 12(b)(6) standard of review, derivative actions are subject to review under Rule 23.1, which is discussed below.

purpose of the demand requirement is to allow the corporation time to remedy the shareholder's complaints "prior to . . . judicial intervention." Id. See also Mozes v. Welch, 638 F. Supp. 215, 218 (D. Conn. 1986);Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1831. Once demand is made, the board must investigate the alleged wrongdoing and then decide upon an appropriate course of action. Recchion v. Kirby, 637 F. Supp. 1309, 1318-19 (W.D. Pa. 1986).

If the board decides not to sue, the court must defer to its decision as long as it is a "reasonable business judgment." Id. Because a demand places control of the derivative litigation in the hands of the directors, a response is subject to review according to the traditional "business judgment rule." Levine v. Smith, 591 A.2d 194, 212 (Del. 1991). The business judgment rule is a presumption that "the directors of a corporation act[] on an informed basis in good faith and in the honest belief that the action taken was in the best interests of the company." In re Abbott Laboratories Derivative Shareholders Lit., 325 F.3d 795, 808 (7th Cir. 2003). The demand requirement affords the directors an opportunity to exercise their business judgment to waive a legal right of the corporation if they believe that it would be in the best interests of the corporation. Kamen, 500 U.S. at 96. The shareholder has the burden to raise a reasonable doubt that the board's decision is not protected by the business judgment rule. Levine, 591 A.2d at 214. For a board to benefit from the protection of the business judgment rule there must be due care, adequate information, and good faith in making the business decision. Miller v. Thomas, 656 N.E.2d 89, 95 (Ill. App. Ct. 1995). If a demand is refused, the shareholder can only maintain a derivative action if he can show that the board's decision was not protected by the business judgment rule. Lewis v. Hilton, 648 F. Supp. 725, 727 (N.D. Ill.

1986). "The shareholder derivative suit is designed to permit attacks on improperly-motivated business judgments, not poor ones." Id. at 728.

To ensure compliance with the demand requirement, Rule 23.1 and 805 ILCS 5/7.80 require the plaintiff shareholder to "allege . . . with particularity" the demand made and his "failure to obtain" action by the board. Specifically, Rule 23.1 mandates that:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege . . . with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Similarly, 805 ILCS 5/7.80 requires that:

> A complaint in a proceeding brought in the right of a corporation must allege with particularity the demand made, if any, to obtain action by the directors and why the complainant could not obtain the action or why he or she did not make the demand.

Accordingly, to properly bring a derivative action, the plaintiff shareholder must either: (1) make a written demand upon the corporation and allege with particularity why the board's refusal to bring suit was not a proper decision under the business judgment rule; or (2) sufficiently allege why making a demand would have been futile.

Once demand is made, however, the board must have sufficient time to investigate the allegations in the demand and to decide whether to bring suit itself or reject the demand. Mills, 91 F.R.D. at 73. Premature filing of a suit without giving the board sufficient time to make a reasonable business decision "frustrates the policy of Rule 23.1," Recchion, 637 F. Supp. at 1319, and should result in dismissal of the suit without prejudice, with leave to refile upon a response being made in a reasonable amount of time. Mills, F.R.D. at 73.

Because "the amount of time needed for a response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand," courts have not formulated a specific rule as to what constitutes a reasonable response time. Allison v. General Motors Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985). Instead, courts determine reasonable response time by examining the complexity of the issues presented by the demand and the surrounding circumstances. Id. at 1117-18. See also Mozes, 638 F. Supp. at 220 (the standard for assessing the length of time necessary to respond is one of "reasonableness according to the circumstances").

Applying the above principles, courts have found varying lengths of time to be reasonable for the board to investigate and respond to a demand. See Mozes, 638 F. Supp. at 221 (suit brought eight months after demand was premature in light that the board was waiting to respond until after a pending grand jury investigation into the issue presented by the demand); Rechhion, 637 F. Supp. at 1319 (filing of action two months after demand was premature where the "board was not afforded sufficient time" to investigate complex issues raised in demand); Mills, 91 F.R.D. at 71-73 (suit filed three days after the demand premature because it was "practically impossible" for the corporation to have responded); Siegal v. Merrick, 84 F.R.D. 106, 109-10 (S.D.N.Y. 1979) (filing of suit pending investigation by special committee was found to be premature). Although courts give boards generous leeway to investigate and respond to demand letters, the board may not simply "brush-off" the demand letter by responding that the allegations are under investigation. Allison, 604 F. Supp. at 1117. The board must actually investigate the allegations in the demand or if delaying the investigation the delay must be reasonable. See id.

8

In Mozes, 638 F. Supp. at 217, the plaintiff/shareholder made a demand three days after the corporation was indicted for overcharging the United States Air Force. The demand requested that the company take "legal action" against corporate officers and directors for gross negligence or "purposely permitting such illegal acts." Id. Within a month of the demand, the corporation notified the plaintiff that the board had appointed an independent special litigation committee to investigate the demand. Id. The following month, the corporation again wrote to the plaintiff stating that while it was unable to give an exact time frame, the special litigation committee "would report to the board, as soon as [it] had a better grasp of the scope of the problem and [then] might be able to arrive at a time frame." Apparently not satisfied with this response, the plaintiff filed suit six months later – eight months after it made the demand. Id. at 217-18.

Granting the corporation's motion to dismiss, the court found that the suit was "premature" because the board and the special litigation committee "were not afforded adequate time under the circumstances of this complex case to complete their investigation." Id. at 221. In reaching this decision, the court relied on the fact that the special litigation committee was required to complete an "extensive investigation" and was stymied in its investigation by an ongoing grand jury investigation into the alleged wrongdoing alleged in the demand. Id. The court found that it was reasonable for the board to respond to the demand two months after the conclusion of the criminal proceedings. Id. The court found that the response was not a "brush-off" of the plaintiff's demand but that the committee had "responded with as much precision as was possible under the circumstances." Id. The court focused on the fact that the committee's investigation was proceeding in tandem with a grand jury investigation into the

9

very acts alleged in the demand. Id. The committee had determined that in order to not interfere with the grand jury proceedings, the demand investigation could not be completed until the end of the grand jury proceedings. Id. at 221-22. The court found that it would be a mistake not to encourage the committee to conduct the most thorough investigation before responding. Id. at 222. Accordingly, the court dismissed the complaint without prejudice with leave to refile if a response was not forthcoming within two months after the completion of the criminal proceedings. Id.

Here, applying the above principles, this Court finds that MacCoumber brought this action prematurely in that the Board should have been given time to investigate and give a definitive response. MacCoumber sent his Demand on September 9, 2003. On October 29, 2003, the Board sent its Response stating in relevant part that it would give the Demand "prompt[]" consideration once the demand futility issue was decided in the State Court Litigation. According to the Board, this delay is based on its decision that "it would not be a prudent expenditure of [Abbott's] resources for it to initiate an inquiry into the allegation in [the Demand] at this time, inasmuch as [Abbott] will also have to expend resources to defend against the contention that demand is futile" in the State Court Litigation." Instead of waiting until the futility issue was decided in the State Court Litigation, however, MacCoumber filed this action on December 31, 2003, just over three months after the Demand.

Contrary to MacCoumber's assertion, the Board did not "indefinitely" postpone its investigation. As in Mozes, 638 F. Supp. at 222, this Court finds that the Response was not a "brush-off" of the Demand but that the Board "responded with as much precision as was possible under the circumstances." The Response stated that it would "promptly" look into the

10

allegations in the Demand once the futility issue was settled. The Board's decision to postpone its investigation is reasonable given that it is currently litigating related issues in state court. If the plaintiffs in the State Court Litigation prevail, then demand and investigation in this case will be unnecessary. If, however, Abbott prevails in the State Court Litigation, then Abbott will be required to investigate. Thus, given that the resolution of the demand futility issue in the State Court Litigation could resolve this action, it would be unreasonable to require the Board to expend Abbott's resources unnecessarily. Accordingly, this Court finds that the postponement of an investigation until the State Court Litigation is resolved is not an unreasonable or untimely delay, and therefore this action is dismissed without prejudice as being premature.[5]

---

[5] Given this Court's decision to grant the Motion Dismiss without prejudice, it is unnecessary to address the request to stay the proceedings under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [17-1] is GRANTED without prejudice with leave to refile an amended complaint within 2 months after a decision in the State Court Litigation. It is so ordered.

ENTER:

*Blanche M. Manning*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 7-29-04